**Cary R. Cadonau**, OSB #002245
ccadonau@brownsteinrask.com
BROWNSTEIN RASK LLP
1 SW Columbia Street, Ste. 900
Portland, Oregon 97204
Telephone: (503) 221-1772
Fax: (503) 221-1074
        Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| REGIONAL LOCAL UNION NOS. 846 AND 847, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO; REGIONAL DISTRICT COUNCIL WELFARE PLAN AND TRUST, f/k/a LOCAL 846 REBAR WELFARE TRUST, By and Through Its Board of Trustees; and REGIONAL DISTRICT, COUNCIL RETIREMENT PLAN AND EMPLOYEE BENEFIT PLANS TRUST, *f/k/a REBAR RETIREMENT PLAN AND* AND DUES CHECK OFF) *TRUST*, By and Through Its Board of Trustees; and REGIONAL DISTRICT COUNCIL TRAINING TRUST, *f/k/a LOCAL 846 TRAINING TRUST*, By and Through its Board of Trustees; and REGIONAL DISTRICT COUNCIL VACATION TRUST FUND, *f/k/a LOCAL 846 VACATION TRUST*, By and Through Its Board of Trustees, | Civil No. **COMPLAINT** (Action Under ERISA and LMRA to Compel Payment of Contributions to Employee Benefit Plans and Dues Check Off) |
|                    Plaintiffs, | |
|        v. | |
| LSRI, LLC d/b/a Lone Star Rebar Installers, a Texas Limited Liability Company, | |
|                    Defendant. | |

Page  1  – **COMPLAINT**

## COMPLAINT

COME NOW Plaintiffs, by and through undersigned counsel, and for their Complaint against Defendant state as follows:

## Parties

1.     Plaintiff Regional Local Union Nos. 846 and 847, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO ("Local Unions") are "employee organizations" within the meaning of § 3(4) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1002(4), and are labor organizations within the meaning of Section 1(5) of the Labor-Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 151(5).

2.     Plaintiff Regional District Council Welfare Plan and Trust, *f/k/a Local 846 Rebar Welfare Trust* (hereinafter "Welfare Trust") is an employee benefit plan within the meaning of Sections 3(1) and (3), 502 and 515 of ERISA, 29 U.S.C. §§ 1002(1), (3), 1132 and 1145. The legal name of the Welfare Trust was amended by its board of trustees in 2008. In all respects, the Welfare Trust remains the same legal entity. The board of trustees are fiduciaries within the meaning of Section 3(21)(A) and 502 of ERISA, 29 U.S.C. §§ 1002(21)(A) and 1132 and are authorized to maintain this cause of action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to enforce the terms of an ERISA plan.

3.     Plaintiff Regional District Council Retirement Plan and Trust, *f/k/a Rebar Retirement Plan and Trust* (hereinafter "Pension Trust") is an employee benefit plan within the meaning of Sections 3(1) and (3), 502 and 515 of ERISA, 29 U.S.C. §§ 1002(1), (3), 1132 and 1145. The legal name of the Pension Trust was changed by an amendment adopted by its board

Page 2 – **COMPLAINT**

of trustees in 2008. In all respects, the Pension Trust remains the same legal entity. The board of

trustees are fiduciaries within the meaning of Section 3(21)(A) and 502 of ERISA, 29 U.S.C. §§

1002(21)(A) and 1132 and are authorized to maintain this cause of action pursuant to Section

502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to enforce the terms of an ERISA plan.

4.     Plaintiff Regional District Council Training Trust, *f/k/a Local 846 Training Trust*

(hereinafter "Training Trust") is an employee benefit plan within the meaning of Sections 3(1)

and (3), 502 and 515 of ERISA, 29 U.S.C. §§ 1002(1), (3), 1132 and 1145. The legal name of the

Training Trust was changed by an amendment adopted by its board of trustees in 2008. In all

respects, the Training Trust remains the same legal entity. The board of trustees are fiduciaries

within the meaning of Section 3(21)(A) and 502 of ERISA, 29 U.S.C. §§ 1002(21)(A) and 1132

and are authorized to maintain this cause of action pursuant to Section 502(a)(3) of ERISA, 29

U.S.C. § 1132(a)(3), to enforce the terms of an ERISA plan.

5.     Plaintiff Regional District Council Vacation Trust Fund, *f/k/a Local 846 Vacation

Trust* (hereinafter "Vacation Trust") is an employee benefit plan within the meaning of Sections

3(1) and (3), 502 and 515 of ERISA, 29 U.S.C. §§ 1002(1), (3), 1132 and 1145. The legal name

of the Vacation Trust was changed by an amendment adopted by its board of trustees in 2008.

In all respects, the Vacation Trust remains the same legal entity. The board of trustees are

fiduciaries within the meaning of Section 3(21)(A) and 502 of ERISA, 29 U.S.C. §§ 1002(21)(A)

and 1132 and are authorized to maintain this cause of action pursuant to Section 502(a)(3) of

ERISA, 29 U.S.C. § 1132(a)(3), to enforce the terms of an ERISA plan.

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

6.     Together, the Welfare Trust, Pension Trust, Training Trust, and Vacation Trust shall be referred to as the "Plaintiff Funds." Together, the Local Unions and Plaintiff Funds shall be referred to as "Plaintiffs."

7.     Defendant is a Texas limited liability company.

8.     Defendant is, was and at all relevant times has been an employer in an industry affecting commerce within the meaning of Sections 3(5), (11), (12) and 515 of ERISA, 29 U.S.C. §§ 1002(5), (11), (12) and 1145, and of §§ 2(2), (6) and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6) and (7).

## Jurisdiction and Venue

9.     This Court has subject matter jurisdiction over the Plaintiff Funds' and their trustees' claims by virtue of ERISA Sections 502(a)(3) and 515, 29 U.S.C. §§ 1132(a)(3) and 1145, in that the trustees are fiduciaries who seek to enforce provisions of certain trust documents establishing the Plaintiff Funds, to which Defendant is bound and pursuant to which Defendant is obligated to contribute to the Plaintiff Funds, as further set forth herein.

10.     This Court has subject matter jurisdiction over the Local Unions' claims pursuant to LMRA § 301(a) and (c), 29 U.S.C. § 185(a) and (c), in that they seek to enforce Defendant's obligations pursuant to a valid and binding collective bargaining agreement.

11.     Jurisdiction and venue are proper pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), in that the Plaintiff Funds are administered by The William C. Earhart Company, Inc. (hereinafter "Earhart") in Portland, Oregon, within the territorial jurisdiction of this Court.

Page 4 – **COMPLAINT**

12.     Jurisdiction and venue are proper in this Court pursuant to LMRA § 301(a), 29 U.S.C. § 185(a), in that Earhart processes the Local Unions' working assessments in Portland, Oregon, within the territorial jurisdiction of this Court.

## Facts Common to All Counts

13.     At all times relevant to this Complaint, Defendant is, was and has been signatory to one or more collective bargaining agreements (the "Agreement") with the Local Unions. A true, accurate and correct copy of the Agreement is attached hereto as Exhibit 1.

14.     Pursuant to the Agreement, Defendant recognizes the Local Unions as the exclusive collective bargaining representative of all craft work covered by the Agreement and employed by Defendant within the geographical areas further specified in the Agreement. *See*, Exhibit 1, Art. I.

## COUNT I:   Unpaid Contributions Under ERISA

Come now the Plaintiff Funds, and for Count I of their Complaint, state as follows:

15.     Plaintiffs restate and reincorporate paragraphs 1 through 14 of their Complaint, as if fully set forth herein.

16.     Pursuant to the Agreement, Defendant agreed to the establishment of and to be bound by certain trusts establishing the Plaintiff Funds. *See*, Exhibit 1, Art. XVII, §§ 1-4.

17.     The trust documents are incorporated into the Agreement as they existed at the date of the Agreement "and as they may be amended by the trustees from time to time during the term of this Agreement." Thus, the trust documents "apply to the signatory Employer." *See*, Exhibit 1, Art. XVII, § 10.

Page 5 – **COMPLAINT**

18.     The Agreement requires Defendant to pay contributions at specified hourly rates for each hour worked by each employee covered by the Agreement. Such contributions are to be paid at the office of the Plaintiff Funds. *See*, Exhibit 1, Art. XVII, § 7.

19.     The rates of contribution are subject to change, as provided in the Agreement. *See*, Exhibit 1, Art. XVII, § 8.

20.     Defendant is required to file reports of its hours and to pay contributions by the fifteenth day of each month for the previous month's work. *See*, Exhibit 1, Art. XVII, § 9.

21.     If Defendant fails to pay contributions by the fifteenth day of a particular month, Defendant is liable for interest in the amount of 0.59% per month on all unpaid balances, accounting fees, attorney's fees, auditing fees, and expert fees in the event of litigation to collect delinquent contributions. *See*, Exhibit 1, Art. XVII, § 9.

22.     Pursuant to the trust documents and collection policy governing the Plaintiff Funds and ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), Defendant is liable to the Plaintiff Funds for liquidated damages in the amount of twenty percent (20%) of any delinquency.

23.     Defendant has failed to submit reports or contributions pursuant to the Agreement.

24.     Since Defendant has failed to submit reports or payments, the full amount of any delinquency owed to the Plaintiff Funds is unknown and cannot be known without an audit of Defendant's records.

25.     As a result of Defendant's failure to make the required contributions, the Plaintiff Funds have been harmed.

Page 6 – **COMPLAINT**

26.     Since the amount of contributions due is not known, the Plaintiff Funds lack an adequate remedy at law. The Plaintiff Funds will suffer immediate, continuing and irreconcilable injury and damage unless Defendant is ordered to specifically perform all of its obligations required under the Agreement and to submit its records to an audit and to pay outstanding contributions due, interest, liquidated damages and other costs as set forth herein, in the Agreement, trust documents and ERISA.

WHEREFORE, the Plaintiff Funds pray that the Court:

a.      Enter judgment for the Plaintiff Funds and against Defendant;

b.      Enter an interlocutory order requiring Defendant to submit its records to an audit, and further, that Defendant reimburse the Plaintiff Funds the costs of said audit;

c.      Enter an order awarding the Plaintiff Funds all amounts determined to be due and owing pursuant to the audit;

d.      Enter an order awarding the Plaintiff Funds interest in the amount of 0.59% per month on all outstanding contributions determined to be due;

e.      Enter an order awarding the Plaintiff Funds liquidated damages in the amount of twenty percent (20%) of the delinquency;

f.      Enter an order awarding the Plaintiff Funds their attorneys' fees, auditing fees, accounting fees, expert fees, and other costs; and

g.      Enter orders for such further relief as the Court deems proper under the circumstances.

**COUNT II:   Unpaid Dues and Working Assessments Under the LMRA**

Come now the Local Unions, and for Count II of their Complaint, state as follows:

Page 7 – **COMPLAINT**

BROWNSTEIN | RASK LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503.221.1074

27.     Plaintiffs restate and reincorporate paragraphs 1 through 14 of their Complaint, as if fully set forth herein.

28.     The Agreement requires Defendant to submit dues and working assessments via check-off and to forward them to the Local Unions. *See* Exhibit 1, Art. XX.

29.     The Agreement requires Defendant to remit such check-off amounts to the Local Unions, along with a list of covered employees, by the fifteenth day of each month. *See* Exhibit 1, Art. XX.

30.     The Plaintiff Funds are the authorized collection agent under the Agreement for such working assessments, which are processed by Earhart in Portland, Oregon.

31.     Defendant has failed to remit payment of check-off amounts pursuant to the Agreement.

32.     Since Defendant has failed to submit reports or payments, the full amount of the check-off amount owed to the Local Unions is unknown and cannot be known without an audit of Defendant's records.

33.     As a result of Defendant's failure to submit the required check-off amounts, the Local Unions have been harmed.

34.     Since the check-off amounts due is not known, the Local Unions lack an adequate remedy at law. The Local Unions will suffer immediate, continuing and irreconcilable injury and damage unless Defendant is ordered to specifically perform all of its obligations required under the Agreement and to submit its records to an audit and to pay the outstanding check-off amounts due.

**BROWNSTEIN | RASK** LLP
1 SW COLUMBIA STREET // SUITE 900
PORTLAND, OR 97204
P 503.221.1772 F 503-221-1074

WHEREFORE, the Local Unions pray that the Court:

a.      Enter judgment for the Plaintiff Local Unions and against Defendant;

b.      Enter an interlocutory order requiring Defendant to submit its records to an audit, and further, that Defendant reimburse the Plaintiff Local Unions the costs of said audit;

c.      Enter an order awarding the Plaintiff Local Unions all check-off amounts determined to be due and owing pursuant to the audit;

d.      Enter an order awarding the Local Unions their attorneys' fees, auditing fees and other costs; and

e.      Enter orders for such further relief as the Court deems proper under the circumstances.

DATED this 30th day of September 2022.

BROWNSTEIN RASK, LLP

_____
Cary R. Cadonau, OSB #002245
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 30, 2022, a copy of the foregoing was mailed, by certified mail, return receipt requested, to the Secretary of Labor, United States Department of Labor, P.O. Box 1914, Washington, D.C. 20013 and to the Secretary of Treasury, United States Treasury, 15th and Pennsylvania Avenue, Washington, D.C. 2022.

_____
Cary R. Cadonau, OSB #002245
Attorney for Plaintiffs

Page 9 – **COMPLAINT**

Site Name:  SpaceX, Starship Integration Tower 2

Site Address:  Cape Canaveral, Florida

# Lone Star Rebar Installers, LLC

## Site Specific / 1 (one) Project
# AGREEMENT

---

Regional District Council &
Reinforcing Local Unions 846 and 847

January 1, 2020 to June 30, 2023

# Table of Contents

AGREEMENT ...................................................................................................................... 3

    Article I: Recognition ...................................................................................................... 3

    Article II: Management Rights ....................................................................................... 3

    Article III: Employment ................................................................................................. 3

    Article IV: Craft Jurisdiction.......................................................................................... 3

    Article V: Union Management Committee ................................................................... 4

    Article VI: Hours, Overtime, Shifts and Wages............................................................ 5

    Article VII: Davis-Bacon ................................................................................................ 7

    Article VIII: Holidays ..................................................................................................... 7

    Article IX: Grievance Procedure ................................................................................... 7

    Article X: Union Security ............................................................................................... 8

    Article XI: Work Stoppages and Lockouts ................................................................... 9

    Article XII: Subcontracting............................................................................................ 9

    Article XIII: Non-Discrimination................................................................................. 10

    Article XIV: General Savings Clause............................................................................ 10

    Article XV: Training Program ...................................................................................... 10

    Article XVI: Manning ................................................................................................... 11

    Article XVII: Fringe Benefit Funds.............................................................................. 11

    Article XVIII: IMPACT .................................................................................................. 14

    Article XIX: Industry Fund ........................................................................................... 14

    Article XX: Dues Check-off........................................................................................... 14

    Article XXI: Territorial Jurisdiction............................................................................. 15

    Article XXII: Duration and Termination..................................................................... 16

APPENDIX "A": WAGE RATES .......................................................................................... 19

APPENDIX "B": LOW UNION DENSITY FORM .................................................................. 25

APPENDIX "C": GRANDFATHERED JOBS FORM .............................................................. 26

SpaceX, Cape Canaveral, FL
Site Specific / 1 (one) Project

## AGREEMENT

This Agreement is made and entered into on this ____21st____ day of ____February____, 20_22_, by and between **Regional District Council and Local Unions 846 and 847** who are affiliated with said District Council all of which are affiliated with the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, and ____Lone Star Rebar Installers, LLC____, hereinafter referred to as the "Employer."

## ARTICLE I
## RECOGNITION

Section 1.    The Employer recognizes Regional District Council, Local 846 and Local 847 (hereinafter sometimes referred to as the "Union") of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers as the exclusive collective bargaining representative of all craft work covered by this Agreement and employed by the Employer within the geographical areas stated in Article XXI of this Agreement.

## ARTICLE II
## MANAGEMENT RIGHTS

Section 1.    The Employer retains full and exclusive authority for the management of its operations.  Except as expressly limited by other provisions of this Agreement, the Employer may direct the working force, at its sole prerogative, including hiring, selection of foreman, promotion, transfer, layoff or discharge of its employees.  No rules, customs or practices shall be permitted or observed which limit or restrict production of employees except as expressly limited by other provisions of this Agreement.

## ARTICLE III
## EMPLOYMENT

Section 1.    The Employer shall have the right to employ employees from whatever source in the jurisdiction covered by this Agreement and shall have the right to transfer employees into any jurisdiction within the coverage of this Agreement.

## ARTICLE IV
## CRAFT JURISDICTION

Section 1.    It is agreed that the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers and such charter as shall be issued to the Unions by the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers.

3

Section 2.    The work covered by this Agreement includes all or any of the following:

(A)    Work in connection with field fabrication, handling, racking, sorting, cutting, bending, loading and unloading, hoisting, placing, burning, welding and tying of all materials used to reinforce concrete construction.

(B)    Realigning of reinforcing iron, wire mesh placing, bricking, pulling and similar reinforcing materials, placing steel dowels as well as refastening and resetting same while concrete is being poured.

C)    Reinforcing steel and wire mesh in roadways and sidewalks in connection with building construction.

(D)    The handling or placing of "J" or Jack bars on slip form construction; the placing of all clips, bolts and steel rods and wire fabric or mesh pertaining to gunite construction; the placing of steel-tex or paper-back mesh used primarily for reinforcing and placing wire mesh to reinforce gypsum roof construction.

(E)    Post Tensioning:  All loading and unloading, hoisting, placing and tying of all post tensioning cables.  Also, wrecking of cones, wedging of the tendons, stressing, cutting and repairing.

(F)    Any other work related to subparagraphs (A) through (E) above, including the handling, set up and use of automated or semi-automated equipment used for placing and fastening reinforcing materials on site.  This includes any monitoring and adjusting of the equipment during its use.

(G)    Any work assigned by the Employer and agreed to by the Union on a specific jobsite, although such agreement will have no precedent impact on other jobsites.

(H)    All welders requiring pre-job AWS or AMSE certifications for groove welds on plate or pipe.

## ARTICLE V
## UNION MANAGEMENT COMMITTEE

Section 1.    The Employer and the Union agree that there shall be established a "Union Management Committee" whose purpose shall be to discuss issues of importance to the Employers, Union and employees and which shall establish, subject to union ratification procedures, an hourly wage within the various geographical areas within the coverage of this Agreement.  Any employer signatory to this Agreement delegates to the Employers designated on the Union Management Committee the authority to bargain on its behalf concerning wages, working conditions and any other terms of this Agreement and does

4

hereby agree to abide by any modifications made to the Agreement by Employer representatives.

Section 2.    The Committee shall consist of five (5) representatives of Employers, who shall be selected by the majority of Employers representatives sitting on the Committee at the time of the vacancy, and five (5) representatives of the Union, who shall be selected by the International President of the Union.  The Employer and Union representatives shall establish the base wage rate for each geographic area at the time of execution of this Agreement and shall set forth the region and the wage in that Region in Appendix A attached hereto.  The Committee shall meet at least every six months to ensure the wage rate is competitive within the area, unless the Committee believes that additional meetings are needed. Appendix A shall be revised accordingly and annually on July 1st of each year.


**ARTICLE VI**
**HOURS, OVERTIME, SHIFTS, AND WAGES**

<u>Section 1. Hours of Work.</u>

(A)    The workweek, except as otherwise specified in this Agreement, shall be Monday through Sunday. Eight (8) hours per day shall constitute a standard workday with a one-half (½) hour unpaid lunch period. All employees shall be entitled to a ten (10) minute morning break which shall be taken within two and one-half hours after start time. These working hours may be changed by mutual consent of the Employer and the Union.  Employees shall be at their place of work prepared to start work at the designated starting time each day.  Forty (40) hours per week shall constitute a regular week's work.  A designated one-half (½) hour unpaid lunch period shall be scheduled at the midpoint of the scheduled work shift.  Nothing in this Agreement shall be construed as guaranteeing any employee eight (8) hours per day or forty (40) hours per week.

(B)    The Employer has the option of working either five (5) eight-hour days or four (4) ten-hour days to constitute a normal forty (40) hour workweek.

(C)    When the four (4) ten-hour day workweek is in effect, the standard workday shall be an established consecutive ten (10) hour period exclusive of a one-half (½) hour unpaid lunch period.  Forty (40) hours per week shall constitute a regular week's work.

(D)    In the event the job is down for any reason beyond the Employer's control, then any day except Sunday and holiday may, at the option of the Employer, be worked as a makeup day; straight-time pay not to exceed ten (10) hours per day or forty (40) hours per week.

(E)    The Employer will designate starting time.

5

Section 2. Overtime.

(A)    All overtime work performed in excess of ten (10) hours in a day or forty (40) hours in a week will be paid at time and one-half the straight time rate of pay.

(B)    Work performed on Sundays and Holidays will be paid at time and one half the straight time rate of pay.

Section 3.  Shifts.

(A)    When so elected by the Employer, multiple shifts may be worked.

Section 4.  Wages and Fringes.

(A)    The employer shall pay the wage and benefit rates in accordance with Appendix A incorporated herein.

(B)    It is agreed that should any work covered under this Agreement be subject to a Project Labor Agreement, National Maintenance Agreement or NCA, then the wages and fringe benefits as set forth in the Building, Heavy and Highway Rate in Appendix A attached hereto shall apply to that work.

(C)    On Davis-Bacon or prevailing wage jobs where the prevailing rate is less than the Building, Heavy & Highway rate for that area, a Low Union Density Form (Appendix B) must be submitted and approved for a rate lower than the Building, Heavy & Highway rate to be paid.  No rate will be approved which is lower than either the Residential rate specified in Appendix A or the prevailing wage in that geographic area, whichever is greater.

(D)    Wages due shall be paid to all employees weekly, but not later than the following Friday.  Payment may be made by check or direct deposit, at the Employer's discretion.

(E)    Jobs bid and secured prior to becoming signatory, may be grandfathered with approval of the Regional District Council President.  Any request for grandfathered jobs shall be done by completing and submitting a Grandfathered Jobs Form (Appendix C), along with proof of the date the project was awarded.

(F)    The Employer and Union agree that on projects not governed by Davis-Bacon, state prevailing wage law, a Project Labor Agreement, the National Maintenance Agreement, or the NCA, where the parties have jointly determined there is low union density, the parties will meet and confer to discuss efficient economic methods whereby they can both compete in these low union density areas.  Should the Union and Employer be unable to reach agreement on the methods to be used by the parties to efficiently

6

address low union density, then the wage provision of Appendix A for the geographic area may be reopened for further negotiations. Should the parties fail to reach an agreement concerning wages in the low-density geographical area, the Employer shall be free to unilaterally implement a wage rate for that area only, however at no time shall the wage rate be below the residential rate for that geographic area.

## ARTICLE VII
## DAVIS-BACON

Section 1.    On all jobs covered by Davis-Bacon or any state prevailing wage law, the Employer agrees to pay the wages and fringe benefit amounts prevailing on those jobs, provided those wages are higher than the wages established by this Agreement.  Only bona fide registered apprentices can be paid less than the prevailing rate for journeyman ironworkers.

## ARTICLE VIII
## HOLIDAYS

Section 1.    The recognized holidays shall be as follows:

| | |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| Fourth of July | Christmas Day |

Section 2.    Work performed on Labor Day will be at the discretion of the Local Union. In the event a holiday falls on Sunday, the following day, Monday, shall be observed as such holiday.  Monday holidays shall be honored in keeping with Federal Law.  If employees are required to work on a holiday, as observed, they shall receive time and one half the straight time rate of pay.  Holidays listed above may be changed by agreement by the Union and the Employer.

## ARTICLE IX
## GRIEVANCE PROCEDURE

Section 1.    Any question arising out of this Agreement involving its interpretation or application, excluding trades jurisdictional disputes, shall be settled under the following procedures:

Step 1.    When any employee or the Union subject to the provisions of this Agreement believes a violation of this Agreement has occurred, acting through the Local Union steward, within three (3) working days after the occurrence or non-occurrence giving rise to the dispute, said employee or the Union shall give notice to the Employer stating the section alleged to have been violated.  Failure to raise any dispute within three (3) working days of the occurrence or non-occurrence shall constitute a waiver of the right

7

asserted by the employee.  The dispute shall be discussed by the aggrieved employee with the steward and the Employer's representative at the construction site.  If the dispute is not settled within twenty-four (24) hours, Step 2 of the Grievance Procedure may be pursued no later than two (2) working days thereafter.

Step 2.    The employee, the local business representative of the Union and a representative of the Employer shall meet within ten (10) working days after timely notice of proceeding to Step 2 has been made and endeavor to adjust the matter.  At this point the grievance shall be submitted in writing by the business representative of the Local Union to the Employer.  If agreement cannot be reached after the meeting between these parties, the matter shall be referred to Step 3 of this Grievance Procedure within three (3) working days thereafter.

Step 3.    Failure under Step 2 to reach a decision shall constitute a basis for submittal of the dispute to arbitration for a binding decision.  Unless the Employer and the Union can otherwise select an impartial Arbitrator, the Employer and the Union shall choose an Arbitrator from a panel of seven (7) requested from the Federal Mediation and Conciliation Service by alternatively striking a name from the panel until only one arbitrator remains.  Costs of the Arbitrator shall be borne equally by the Union and the Employer. The decision of the Arbitrator shall be binding upon all parties.

Section 2.    The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement. Failure to process a grievance, within the time limits provided above or within a mutually agreed upon extension of time, shall be deemed a waiver of such grievance.

Section 3.    In order to encourage the resolution of disputes and grievances at Steps 1 and 2 of this Grievance Procedure, the parties agree that such settlements shall not be precedent setting.

**ARTICLE X**
**UNION SECURITY**

Section 1.    It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union signatory to the governing local labor agreement in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on the effective date of this Agreement, shall become and remain members in good standing in the Union signatory to the governing local labor agreement.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the eighth day following beginning of such employment, become and remain members in good standing of the Union signatory to the governing local labor agreement. If the Union notifies the Employer that an employee has failed to pay periodic dues and initiation fees uniformly required, the Employer shall be obligated to terminate

8

the employee for such failure.

<u>Section 2.</u>    This Article shall be interpreted in accordance with the provisions of Section 8(a) (3) of the Labor Management Relations Act of 1947, as amended.

<u>Section 3.</u>    The Business Manager may appoint a working steward from among the Employer's Employees.  The steward's duties shall be confined to the Employer's work only and he shall not interfere with any Employer's work.  The job steward will not be permitted to make job decisions unless covered by this Agreement.  All complaints and grievances shall be made through the job steward, who will notify the Employer and, if the complaint or grievance is not immediately adjusted, the Local Union business agent will be notified and will confer with the Employer.  No work stoppages will be permitted.

(A)    The Employer will notify the Union prior to the discharge of a steward and, further, when Employees are laid off, the job steward will be the last Iron Worker laid off, excluding the foreman on the job, providing the steward is capable of performing the work in progress.

(B)    The steward will make a collaborative effort to work together to improve relations between the employer, employees and the Union.

**ARTICLE XI**
**WORK STOPPAGES AND LOCKOUTS**

<u>Section 1.</u>    During the existence of this Agreement, there shall be no strikes, picketing, work stoppages, or disruptive activity by the Union or by any employee; and there shall be no lockout by the Employer.

<u>Section 2.</u>    The Union shall not sanction aid or abet, encourage or condone a work stoppage, strike or work slowdown at the project site and shall undertake all possible steps to prevent any strike, work stoppage or work slowdown.  No employee shall engage in any activities which interfere with the normal operation of the project.  Violations shall be subject to disciplinary action, including discharge.

<u>Section 3.</u>    The Union shall not be liable for acts of employees for whom they have no responsibility.

**ARTICLE XII**
**SUBCONTRACTING**

<u>Section 1.</u>    The Employer agrees that work to be performed at the project site pursuant to the terms and provisions of this Agreement shall not be subcontracted to other firms, parties, Employers or other entity unless such subcontracted work is undertaken,

9

performed and executed by employees who are employed by a contractor or subcontractor signatory to an Agreement with a union affiliated with the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. It is understood and agreed that the purpose and function of this provision is not in any way to limit or restrict the ability of the Employer party to this Agreement to do business with other Employers, but rather, this provision is designed and intended to preserve work for employees whose wages, hours and conditions of employment are prescribed by this Agreement or, in the event subcontracting of work contemplated by this Agreement is undertaken, that the performance of such work and the practice of subcontracting do not result in the undermining of wages, hours and conditions of employment achieved by the Union through the collective bargaining process.

<u>Section 2.</u>    Furnishing of materials, supplies or equipment and the delivery thereof shall not in any case be considered as subcontracting.

**ARTICLE XIII**
**NON-DISCRIMINATION**

<u>Section 1.</u>    The Employer and the Union agree there shall be no discrimination against any employee or prospective employee due to race, color, creed, sex, age, religion or national origin.

**ARTICLE XIV**
**GENERAL SAVINGS CLAUSE**

<u>Section 1.</u>    Any provisions in this Agreement which conflict with any Federal, Provincial, State or Local laws or regulations affecting all or part of the limits covered by this Agreement shall be suspended within the limits to which such law or regulation is in effect. Such suspension shall not affect the operation of any such provisions covered by this Agreement, to which the law or regulation is not applicable.

**ARTICLE XV**
**TRAINING PROGRAM**

<u>Section 1.</u>    All employees hired under this Agreement as "A" Rodman shall continue to be classified as "A" Rodman until the employee has completed 4,000 hours as an "A" Rodman under this Agreement and have completed the training requirements of the Regional District Council Training Trust, or they have completed 7,000 of on the job learning as verified by the RDC Fund Office. Applicants for Journeyman shall pass an evaluation and thereafter, the employee shall be classified as a Journeyman Rodman. After completion of the above-described process, a Journeyman Rodman may not be reclassified as an A-Rodman.

Section 2.    There shall be established a Minimum Wage for "A" Rodman.  The minimum wage shall be no less than the 2nd term apprentice rate for apprentices in the geographic area where the work is performed.

Section 3.    Parties signatory to the Agreement agree to abide by the Apprenticeship Standards of the Regional District Council Training Trust as approved by the U.S. Department of Labor Office of Apprenticeship.

Section 4.    Apprentices may be required to serve a probationary period in accordance with the Apprenticeship Standards of the Regional District Council Training Trust.

Section 5.    Apprentices shall be paid as specified in Appendix A attached hereto.

Section 6.    Employers shall be permitted to employ apprentices at a ratio of not more than one (1) apprentice to every four (4) journeymen.

**ARTICLE XVI**
**MANNING**

Section 1.    The Employer agrees that all work under this Agreement may be performed by his employees, who may travel from site to site, throughout the geographic jurisdiction of this Agreement and who are regularly and customarily employed by the Employer whenever he has work and who because of special knowledge, skill and expertise regarding the Employer's operations are considered necessary by the Employer to efficiently perform work under this Agreement.

**ARTICLE XVII**
**FRINGE BENEFIT FUNDS**

Section 1.    The Employer and the Union have agreed to the establishment of a jointly-administered defined contribution plan to be established pursuant to Trust and named the Regional District Council Retirement Plan and Trust. The Employer agrees to be bound by the terms of the Trust and the rules adopted by the Trustees.  The Trust shall be administered by an equal number of Employer and Union Trustees as specified by the trust.  The initial Employer and Union Trustees were appointed by a majority of the signatory contractors and by the International President, all subsequent appointments shall be in accordance with the Trust document establishing the Plan.

Section 2.    The Employer and the Union have agreed to the establishment of a jointly-administered health and welfare plan to be established pursuant to Trust and named the Regional District Council Welfare Trust.  The Employer agrees to be bound by the terms of the Trust and the rules adopted by the Trustees.    The Trust shall be administered by an equal number of Employer and Union Trustees as specified by the trust.  The initial Employer and Union Trustees were appointed by a majority of the signatory contractors

11

and by the International President, all subsequent appointments shall be in accordance with the Trust document establishing the Plan. At the discretion of the Union Management Committee an Employer may be allowed to opt out of this provision for groups of employees in designated geographical area who are at the time the employer executes this Agreement covered by Employer sponsored insurance. Such employees shall be "grandfathered" and listed on an Appendix which will be made a part of this Agreement. Any and all employees hired after the execution of this Agreement and the attached Appendix shall be subject to the provisions of this Section and shall not be "grandfathered". In considering whether to allow a signatory employer to opt out for certain employees in designated geographical areas, the Employer shall provide specific evidence to the Union Management Committee that it provides to "grandfathered" employees covered under this Agreement Health and Welfare benefits equal or superior to those provided under the Plan. The Employer shall be obligated to maintain such benefits during the entire term of the Agreement for employees covered hereunder and any change in Employer benefits must be approved by the Union Management Committee. The Union Management Committee in its sole discretion shall decide the meaning of "equal or superior". The determination by the Union Management Committee is not subject to the Grievance procedure and the Employer agrees to be bound by the Committee's decision.

<u>Section 3.</u> The Employer and the Union have agreed to the establishment of a jointly-administered Vacation plan to be established pursuant to Trust and named the Regional District Council Vacation Trust. The Employer agrees to be bound by the terms of the Trust and the rules adopted by the Trustees.

<u>Section 4.</u> The Employer and the Union have agreed to the establishment of a jointly-administered apprentice and journeyman training plan to be established pursuant to Trust and named the Regional District Council Training Trust. The Employer agrees to be bound by the terms of the Trust and the rules adopted by the Trustees. The Trust shall be administered by an equal number of Employer and Union Trustees as specified by the trust. The initial Employer and Union Trustees were appointed by a majority of the signatory contractors and by the International President all subsequent appointments shall be in accordance with the Trust document establishing the Plan

<u>Section 5. Key persons.</u> The Employer agrees to make timely payments into all fringe benefit funds negotiated and described herein on any key person designated by the Employer. With respect to all key employees who designate home Local Unions other than the signatory Local Union, the Employer shall make contributions in required amounts to the home local pension, health and welfare, annuity, vacation and other welfare benefit funds, if any, of the home Local Union provided that the trust funds so designated agree to accept the contributions and credit the key persons for those contributions in accordance with the trust funds' rules. The contributions shall be at the customary rates set by the home trust funds. The key persons for whom contributions are made to home trust funds shall look only to those trust funds for benefits. If the home

12

trust funds refuse to accept the contributions, then the contribution amounts shall be added to the key person's take home wages.

Section 6. NRSA and International Agreements.  This section applies to key employees from the Regional District Council working outside the Regional District Council's jurisdiction under an International Agreement as a Key Employee.  When work local fringe rates are higher than the Regional District Council Building Heavy, & Highway rates, key employees shall have their fringes remitted back to the Regional District Council Funds at the Building Heavy & Highway rates at a minimum.

Section 7. Other than key persons.     Any Employer obligated to the terms and provisions of this Agreement shall contribute, pay and remit to the trustees of the fund or funds at the office of the fund or funds amounts as set forth in Appendix A for each hour worked by each employee covered by this Agreement at least until such time that the rate of contribution may be changed in the manner hereinafter provided for.   This Agreement authorizes contributions to such pension, health and welfare, vacation, annuity and other welfare benefit funds as are legal and appropriate under ERISA or under another applicable Federal Labor Law to which the Employer and International Association agree to make contributions in such amount as is agreed and reflected in Appendix A Fringe Benefits.

Section 8.     On July 1 of each year of the term of this Agreement, or more frequently if agreed to by the Union and trustees of the various funds, they shall determine the amount of funds to be distributed to each of the pension, health and welfare, annuity, vacation and other welfare benefit trusts, which constitute the fringe benefit trusts covered by this Agreement.   The sum of all contributions to all trusts shall always equal the amounts reflected for the appropriate time period in Appendix A.  While the contribution rates to each trust may vary to reflect the needs of the various trusts, the sum of said contributions shall be the amounts designated in Appendix A including any allocation of raises.

Section 9.     Failure to make remittances to the fringe benefits funds by the 15th day of the month following the month in which work was performed shall result in the accrual of interest at the rate of .59% per month for all unpaid balances, plus such accounting fees, attorney fees, auditing fees, and other expert fees as are necessary to collect said delinquent amounts.

Section 10.     The terms of the various trust and plan documents as they currently exist, and as they may be amended by the trustees from time to time during the term of this Agreement are incorporated herein and shall apply to the signatory Employer.  Should any Employer fail to make all contributions or file all reports by the 15th of the month following the month in which the work was performed then the provisions of Article XI shall not apply and the Union may engage in a work stoppage, strike or other legal economic activity to enforce the provisions of this Agreement, as well as proceeding under Article IX, so long as the Union has provided the delinquent employer 5 days' notice

13

of its intent to engage in a work stoppage, strike or other legal economic activity.  The Union shall, at the time it provides written notice to the Employer, also provide written notice to the employer members of the Union Management Committee referred to in Article V.

## ARTICLE XVIII
## IMPACT

Section 1.    For each employee covered by this agreement, the Employer shall contribute $0.14 for each hour worked at Residential and Building Heavy Highway rates, or $0.23 for each hour worked at Nuclear rates for each hour worked to the Ironworker Management Progressive Action Cooperative Trust (IMPACT), a non-profit, jointly trusted Cooperative Trust with federal tax exempt status under Section 501(a) of the Internal Revenue Code as an exempt organization under Section 501(c)(5) of the Internal Revenue Code.  The general purposes of the Trust include the improvement and development of the Union Ironworker Industry through Education, Training, Communication, Cooperating and governmental lobbying and legislative initiatives.

Section 2.    The reporting, payment, frequency of payment and administration of such contributions shall be governed by the terms of the IMPACT Trust agreement, policies and resolution to which the Employer, to the extent bound by this agreement, hereby covenants and agrees to be bound.

## ARTICLE XIX
## INDUSTRY FUND

The Parties to this Agreement have established the Rebar Industry Advancement Fund which purpose is to promote and maintain the unionized rebar industry in those states covered under the jurisdiction of the Regional District Council, to improve labor management relations, job security, organizing effectiveness, training, safety and enhance economic development in the area with special efforts toward advancement of the industry.

The Rebar Industry Advancement Fund shall be supervised by (5) trustees appointed by the employer members of the Union Management Committee established under Article V of this Agreement and (5) appointed by the President of the Regional District Council.

Each Employer signatory to this Agreement shall pay ($0.05) Five Cents for each hour worked by its employees to the Rebar Industry Advancement Fund.  Contributions shall be made in the same manner and at the same time as contributions to any employee benefit plan established under this Agreement

## ARTICLE XX

14

## DUES CHECK-OFF

Section 1.    Every Employer signatory to this Agreement agrees to check-off from the wages of any employee employed by such Employer during the term of this Agreement, underline dues and working assessments in the amount specified in the Union's bylaws and to remit said amount to the Union in the following manner:

(A)    The Union will notify the Employer in writing, the amount of dues specified in the bylaws, and will submit to the Employer a copy of the bylaws or the applicable bylaw provision.

(B)    On or before the 15th day of each month, the Employer will remit to the Union, the amount of dues owing as to each employee for the previous month, together with a list of employees covered.

(C)    The obligation of the Employer shall apply only to those employees who have voluntarily signed a dues deduction authorization card, a copy of which shall be provided to the Employer.

(D)    Initiation fees: Standard initiation fees are also subject to the dues deduction provisions of this Article.

## ARTICLE XXI
## TERRITORIAL JURISDICTION

Section 1.    This Agreement shall cover the following geographic areas which are coterminous with the geographic jurisdiction of Local 846 and Local 847: See Appendix D for jurisdictional map.

Alabama, Florida (except the territory currently covered by Local Union No. 272, Miami, Florida[1]), Georgia, Kentucky (only the counties that are within the jurisdiction of Local Union No. 384, Knoxville, Tennessee[2]), Louisiana, Mississippi, North Carolina, South Carolina, Tennessee and Virginia (except the counties currently covered by Local Union No. 5, Washington, DC[3] ).

---

[1]Local Union 272, Miami, Florida – Broward, Collier, Dade, Lee and Monroe Counties
[2]Kentucky – Bell, Breathitt, Clay, Clinton, Cumberland, Harlan, Jackson, Knox, Laurel, Lee, Leslie, McCreary, Owsley, Perry, Pulaski, Rockcastle, Russell, Wayne, and Whitley Counties
[3]Local Union No. 5, Washington, DC – Virginia (County Wide) - Westmoreland, King George, Stafford, Culpeper, Fauquier, Prince William, Fairfax, Loudon and Clarke. (Portions of) - Frederick, Warren, Rappahannock, Spotsylvania, (that portion of Spotsylvania County shall be from the South City Limits of Fredericksburg North). From there in a straight line to the southeast City Limits and excluding Winchester, Virginia; from there in a straight line to northwest City Limits and including Front Royal, Virginia;

Arizona, Arkansas, Colorado, Idaho (except the counties currently covered by Local Union No. 14, Spokane, Washington[4]), Iowa (but only those counties covered by Local Union No. 21, Omaha, Nebraska[5]), Kansas (except the counties currently covered by Local Union No. 10, Kansas City, Missouri[6]), Missouri (but only the counties previously covered by Local Union No. 584, Tulsa, Oklahoma[7]), Nebraska, New Mexico, Nevada (but only those counties covered by Local Union No. 27, Salt Lake City, Utah and Local Union No. 732, Pocatello, ID[8]), Oklahoma, South Dakota, Texas, Utah and Wyoming.

**ARTICLE XXII**
**DURATION AND TERMINATION**

Section 1.    This Agreement shall become effective on January 1, 2020 and remain in full force and effect until midnight of June 30, 2023, and, unless written notice is given by either party to the other by certified or registered mail at least four (4) months prior to such date of a desire for change or termination, this Agreement shall continue in effect for an additional year thereafter.  In the same manner, this Agreement, with any amendments thereof, shall remain in effect from year to year thereafter, subject to termination at the expiration of any such contract year upon notice in writing given by either party to the other at least four (4) months prior to the expiration of such contract year.  Any such notice as provided for in this Section, whether specifying a desire to terminate or to change at the end of the current contract year, shall have the effect of terminating this Agreement at such time.

---

from there in a straight line to the Culpeper County Line and encompassing the County of Culpeper

[4]Idaho – Adams, Benewah, Bonner, Boundary, Clearwater, Idaho, Kootenai, Latah, Lewis, Nez Perce, Shoshone, Valley and Washington Counties

[5]Iowa – Audubon, Buena Vista, Cass, Cherokee, Clay, Crawford, Dickinson, Emmet, Fremont, Harrison, Ida, Lyon, Mills, Monona, Montgomery, O'Brien, Osceola, Page, Palo Alto, Plymouth, Pocahontas, Pottawattamie, Sac, Shelby, Sioux and Woodbury Counties

[6]Local Union No. 10, Kansas City, Missouri – Allen, Anderson, Atchison, Bourbon, Brown, Coffey, Crawford, Doniphan, Douglas, Franklin, Jackson, Jefferson, Johnson, Leavenworth, Linn, Marshall, Miami, Nemaha, Osage, Pottawatomie, Riley, Shawnee, Wabaunsee, and Wyandotte Counties.  Also, the eastern portion of Neosho County and all of Fort Riley, Kansas, (located in both Riley and Geary Counties).

[7]Missouri – Barry, Jasper, Lawrence, McDonald, Newton and Stone Counties.

[8]Nevada –Elko (split between Local Union No. 27, Salt Lake City, UT and Local Union No. 732, Pocatello, ID), Eureka and White Pine Counties.

**Agreement**
**Regional District Council &**
**Reinforcing Local Unions 846 and 847**

This agreement effective January 1, 2020 for the Regional District Council & Reinforcing Local Unions 846 and 847 has been agreed upon by the undersigned Labor and Management Committee.

<table>
<tr><td>**Labor Trustees**</td><td>**Management Trustees**</td></tr>
<tr><td>Michael Relyin</td><td>Keith Smith</td></tr>
<tr><td>Joseph Simpson</td><td>Jeffry Green</td></tr>
<tr><td>Jose Mendoza</td><td>James Whaley</td></tr>
<tr><td>Ronald Alvarado</td><td>Cary Newton</td></tr>
<tr><td>Bernard Evers</td><td>Louie Leon</td></tr>
</table>

**For and on behalf of Regional Reinforcing Locals 846 & 847**

Michael Relyin, Union Co-Chair

**For and on behalf of Management:**

Keith Smith, Management Co-Chair

This is a one job agreement spfor the

17

# SpaceX, Cape Canaveral, FL
# Site Specific / 1 (one) Project Agreement

IN WITNESS WHEREOF, the parties hereto have set their respective hands and seals, and caused this Agreement to be signed by their respective authorized representatives on this _____21st_____ day of ____February____, 20_22.

## SpaceX, Cape Canaveral, FL - Site Specific / 1 (one) Project Agreement

**Regional Local Union No. 846**

_____
Union Representative (signature)

Jose J. Mendoza, BM/FS-T
Print Name

**Regional Local Union No. 847**

Michael T. Relyin, IW Int'l.
Print Name

President, Regional District Council

**Employer (Company Name)**

Lone Star Rebar Installers, LLC

**Employer Representative**

*Leo Castro*
Signature

Leo Castro, President & CEO
Print Name

**Street Address**

417 N. Rudd Street

Burleson, TX 76028
*City, State, Zip Code*

**Telephone Number**

M:(682) 704-5883 / O:(817) 770-0937 ext. 101

**Fax Number**

(817) 778-9892

**Email**

Leo@LoneStarRI.com

This Agreement is not binding unless executed by the President of the Regional District Council.

18

## APPENDIX "A" – EFFECTIVE JULY 1, 2021 TO JUNE 30, 2022

| State | Type of Work | Wage | Bonus/ Vacation | Health/ Welfare | Pension/ Annuity | Wage & Fringe Total | Appr./ Training | Industry Advance. | IMPACT | Total Package |
|---|---|---|---|---|---|---|---|---|---|---|
| ALABAMA | Building, Heavy & Highway | $38.52 | $0.35 | $1.65 | $1.50 | $42.02 | $1.25 | $0.05 | $0.14 | $43.46 |
|  | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| ARIZONA[1] | Building, Heavy & Highway | $42.20 | $0.35 | $1.65 | $1.50 | $45.70 | $1.25 | $0.05 | $0.14 | $47.14 |
|  | Residential (commercial/private) | $20.50 | $0.35 | $1.65 | $0.08 | $22.58 | $0.63 | $0.02 | $0.14 | $23.37 |
| ARKANSAS | Building, Heavy & Highway | $36.61 | $0.35 | $1.65 | $1.50 | $40.11 | $1.25 | $0.05 | $0.14 | $41.55 |
|  | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| COLORADO | Building, Heavy & Highway | $38.04 | $0.35 | $1.65 | $1.50 | $41.54 | $1.25 | $0.05 | $0.14 | $42.98 |
|  | Residential (commercial/private) | $22.50 | $0.35 | $1.65 | $0.08 | $24.58 | $0.63 | $0.02 | $0.14 | $25.37 |
| FLORIDA[2] | Building, Heavy & Highway – Tampa & Vicinity | $43.63 | $0.35 | $1.65 | $1.50 | $47.13 | $1.25 | $0.05 | $0.14 | $48.57 |
|  | Building, Heavy & Highway – remaining area | $38.33 | $0.35 | $1.65 | $1.50 | $41.83 | $1.25 | $0.05 | $0.14 | $43.27 |
|  | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| GEORGIA | Building, Heavy & Highway | $37.11 | $0.35 | $1.65 | $1.50 | $40.61 | $1.25 | $0.05 | $0.14 | $42.05 |
|  | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| IDAHO[3] | Building, Heavy & Highway | $44.51 | $0.35 | $1.65 | $3.00 | $49.51 | $1.25 | $0.05 | $0.14 | $50.95 |
|  | Residential (commercial/private) | $22.50 | $0.35 | $1.65 | $0.08 | $24.58 | $0.63 | $0.02 | $0.14 | $25.37 |

1

[1] Arizona – All of the earned paid sick time requirements of Arizona's Fair Wage and Healthy Families Act, codified in Article 8.1, Chapter 2, Title 23 of the Arizona Revised Statutes, are expressly waived, and shall not apply to the employees covered by this Agreement.
[2] Florida – (Except the territory currently covered by Local Union No. 272, Miami, Florida) – Broward, Collier, Dade, Lee and Monroe Counties
[3] Idaho – (except the counties currently covered by Local Union No. 14, Spokane, Washington) – Adams, Benewah, Bonner, Boundary, Clearwater, Idaho, Kootenai, Latah, Lewis, Nez Perce, Shoshone, Valley and Washington Counties

## APPENDIX "A" – EFFECTIVE JULY 1, 2021 TO JUNE 30, 2022

| State | Type of Work | Wage | Bonus/ Vacation | Health/ Welfare | Pension/ Annuity | Wage & Fringe Total | Appr./ Training | Industry Advance. | IMPACT | Total Package |
|---|---|---|---|---|---|---|---|---|---|---|
| IOWA[4] | Building, Heavy & Highway – Sioux City & Vicinity | $37.61 | $0.35 | $1.65 | $1.50 | $41.11 | $1.25 | $0.05 | $0.14 | $42.55 |
| | Building, Heavy & Highway – Des Moines & Vicinity | $46.42 | $0.35 | $1.65 | $1.50 | $49.92 | $1.25 | $0.05 | $0.14 | $51.36 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| KANSAS[5] | Building, Heavy & Highway | $33.19 | $0.35 | $1.65 | $1.50 | $36.69 | $1.25 | $0.05 | $0.14 | $38.13 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| KENTUCKY[6] | Building, Heavy & Highway | $39.44 | $0.35 | $1.65 | $1.50 | $42.94 | $1.25 | $0.05 | $0.14 | $44.38 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| LOUISIANA | Building, Heavy & Highway – New Orleans & Vicinity | $25.44 | $0.35 | $1.65 | $1.50 | $28.94 | $1.25 | $0.05 | $0.14 | $30.38 |
| | Building, Heavy & Highway – Baton Rouge & Vicinity | $37.70 | $0.35 | $1.65 | $1.50 | $41.20 | $1.25 | $0.05 | $0.14 | $42.64 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| MISSISSIPPI | Building, Heavy & Highway | $37.70 | $0.35 | $1.65 | $1.50 | $41.20 | $1.25 | $0.05 | $0.14 | $42.64 |
| | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| MISSOURI[7] | Building, Heavy & Highway | $36.70 | $0.35 | $1.65 | $1.50 | $40.20 | $1.25 | $0.05 | $0.14 | $41.64 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |

2

[4]Iowa – (but only those counties covered by Local Union No. 21, Omaha, Nebraska) – Audubon, Buena Vista, Cass, Cherokee, Clay, Crawford, Dickinson, Emmet, Fremont, Harrison, Ida, Lyon, Mills, Monona, Montgomery, O'Brien, Osceola, Page, Palo Alto, Plymouth, Pocahontas, Pottawattamie, Sac, Shelby, Sioux and Woodbury Counties
[5]Kansas – (except the counties currently covered by Local Union No. 10, Kansas City, Missouri) – Allen, Anderson, Atchison, Bourbon, Brown, Coffey, Crawford, Doniphan, Douglas, Franklin, Jackson, Jefferson, Johnson, Leavenworth, Linn, Marshall, Miami, Nemaha, Osage, Pottawatomie, Riley, Shawnee, Wabaunsee, and Wyandotte Counties. Also, the eastern portion of Neosho County and all of Fort Riley, Kansas, (located in both Riley and Geary Counties).
[6]Kentucky – (includes the counties that are within the jurisdiction of Local Union No. 384, Knoxville, Tennessee) – Bell, Breathitt, Clay, Clinton, Cumberland, Harlan, Jackson, Knox, Laurel, Lee, Leslie, McCreary, Owsley, Perry, Pulaski, Rockcastle, Russell, Wayne, and Whitley Counties  (also the counties that are within the jurisdiction of Local Union No. 492, Nashville, Tennessee) – Allen, Barren, Christian, Cumberland, Logan, Metcalfe, Monroe, Simpson, Todd, and Warren Counties.
[7]Missouri – Barry, Jasper, Lawrence, McDonald, Newton and Stone Counties.

**EXHIBIT A**
**Page 20 of 28**

## APPENDIX "A" – EFFECTIVE JULY 1, 2021 TO JUNE 30, 2022

| State | Type of Work | Wage | Bonus/Vacation | Health/Welfare | Pension/Annuity | Wage & Fringe Total | Appr./Training | Industry Advance. | IMPACT | Total Package |
|---|---|---|---|---|---|---|---|---|---|---|
| NEBRASKA | Building, Heavy & Highway – Omaha & Vicinity | $45.13 | $0.35 | $1.65 | $1.50 | $48.63 | $1.25 | $0.05 | $0.14 | $50.07 |
| | Building, Heavy & Highway – Scottsbluff & Vicinity | $48.88 | $0.35 | $1.65 | $1.50 | $52.38 | $1.25 | $0.05 | $0.14 | $53.82 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| NEVADA[8] | Building, Heavy & Highway | $46.38 | $0.35 | $1.65 | $3.00 | $51.38 | $1.25 | $0.05 | $0.14 | $52.82 |
| | Residential (commercial/private) | $22.50 | $0.35 | $1.65 | $0.08 | $24.58 | $0.63 | $0.02 | $0.14 | $25.37 |
| NEW MEXICO | Building, Heavy & Highway | $39.61 | $0.35 | $1.65 | $1.50 | $43.11 | $1.25 | $0.05 | $0.14 | $44.55 |
| | Residential (commercial/private) | $21.00 | $0.35 | $1.65 | $1.25 | $24.25 | $0.63 | $0.02 | $0.14 | $25.04 |
| NORTH CAROLINA | Building, Heavy & Highway | $37.15 | $0.35 | $1.65 | $1.50 | $40.65 | $1.25 | $0.05 | $0.14 | $42.09 |
| | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| OKLAHOMA | Building, Heavy & Highway | $36.70 | $0.35 | $1.65 | $1.50 | $40.20 | $1.25 | $0.05 | $0.14 | $41.64 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |
| SOUTH CAROLINA | Building, Heavy & Highway – Charleston & Vicinity | $37.15 | $0.35 | $1.65 | $1.50 | $40.65 | $1.25 | $0.05 | $0.14 | $42.09 |
| | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| SOUTH DAKOTA | Building, Heavy & Highway – Sioux Falls & Vicinity | $37.61 | $0.35 | $1.65 | $1.50 | $41.11 | $1.25 | $0.05 | $0.14 | $42.55 |
| | Building, Heavy & Highway – Rapid City & Vicinity | $48.88 | $0.35 | $1.65 | $1.50 | $52.38 | $1.25 | $0.05 | $0.14 | $53.82 |
| | Residential (commercial/private) | $20.00 | $0.35 | $1.65 | $0.08 | $22.08 | $0.63 | $0.02 | $0.14 | $22.87 |

[8] Nevada –Elko (split between Local Union No. 27, Salt Lake City, UT and Local Union No. 732, Pocatello, ID), Eureka and White Pine Counties.

3

## APPENDIX "A" – EFFECTIVE JULY 1, 2021 TO JUNE 30, 2022

| State | Type of Work | Wage | Bonus/ Vacation | Health/ Welfare | Pension/ Annuity | Wage & Fringe Total | Appr./ Training | Industry Advance. | IMPACT | Total Package |
|---|---|---|---|---|---|---|---|---|---|---|
| TENNESSEE | Building, Heavy & Highway - remaining area | $39.44 | $0.35 | $1.65 | $1.50 | $42.94 | $1.25 | $0.05 | $0.14 | $44.38 |
| | Building, Heavy & Highway- Nashville & Vicinity | $39.96 | $0.35 | $1.65 | $1.50 | $43.46 | $1.25 | $0.05 | $0.14 | $44.90 |
| | Residential (commercial/private) | $18.00 | $0.35 | $1.65 | $0.08 | $20.08 | $0.63 | $0.02 | $0.14 | $20.87 |
| TEXAS | Building, Heavy & Hwy. – Galveston Area & Vicinity | $40.69 | $0.35 | $1.65 | $1.50 | $44.19 | $1.25 | $0.05 | $0.14 | $45.63 |
| | Building, Heavy & Hwy. – Houston & remaining area | $27.74 | $0.35 | $1.65 | $1.50 | $31.24 | $1.25 | $0.05 | $0.14 | $32.68 |
| | Residential (commercial/private) | $18.50 | $0.35 | $1.65 | $0.08 | $20.58 | $0.63 | $0.02 | $0.14 | $21.37 |
| UTAH | Building, Heavy & Highway | $46.38 | $0.35 | $1.65 | $3.00 | $51.38 | $1.25 | $0.05 | $0.14 | $52.82 |
| | Residential (commercial/private) | $22.50 | $0.35 | $1.65 | $0.08 | $24.58 | $0.63 | $0.02 | $0.14 | $25.37 |
| VIRGINIA[9] | Building, Heavy & Highway | $40.66 | $0.35 | $1.65 | $1.50 | $44.16 | $1.25 | $0.05 | $0.14 | $45.60 |
| | Residential (commercial/private) | $18.50 | $0.35 | $1.65 | $0.08 | $20.58 | $0.63 | $0.02 | $0.14 | $21.37 |
| WYOMING | Building, Heavy & Highway | $47.38 | $0.35 | $1.65 | $3.00 | $52.38 | $1.25 | $0.05 | $0.14 | $53.82 |
| | Residential (commercial/private) | $22.50 | $0.35 | $1.65 | $0.08 | $24.58 | $0.63 | $0.02 | $0.14 | $25.37 |

This is a one job agreement spfor the

4

**WELDERS**

All welders requested by an employer and referred to job sites requiring pre-job AWS or AMSE certifications for groove welds on plate or pipe shall be paid, when welding, at a rate of $2.00 above the Journeyman rate for the job on which the welder is requested or referred.

[9] Local Union No. 5, Washington, DC – Virginia (County Wide) – Westmoreland, King George, Stafford, Culpeper, Fauquier, Prince William, Fairfax, Loudon and Clarke. (Portions of) – Frederick, Warren, Rappahannock, Spotsylvania, (that portion of Spotsylvania County shall be from the South City Limits of Fredericksburg North); from there in a straight line to the southeast City Limits and excluding Winchester, Virginia; from there in a straight line to northwest City Limits and including Front Royal, Virginia; from there in a straight line to the Culpeper County Line and encompassing the County of Culpeper

## APPENDIX "A" – EFFECTIVE JULY 1, 2021 TO JUNE 30, 2022

NUCLEAR FACILITY RATES

The following rates will apply to indentured apprentices, journeymen, foremen, and general foremen on nuclear facility projects.

| | Wage Rate | Bonus Fund | Wage & Bonus | Retirement | Health & Welfare | Training | IMPACT | Total |
|---|---|---|---|---|---|---|---|---|
| Journeyman | $ 36.84 | $ 1.50 | $ 38.34 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 42.92 |
| Foreman | $ 42.37 | $ 1.50 | $ 43.87 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 48.45 |
| General Foreman | $ 44.21 | $ 1.50 | $ 45.71 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 50.29 |
| Apprentice 1st Level (65%) | $ 23.95 | $ 1.50 | $ 25.45 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 30.03 |
| Apprentice 2nd Level (75%) | $ 27.63 | $ 1.50 | $ 29.13 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 33.71 |
| Apprentice 3rd Level (85%) | $ 31.31 | $ 1.50 | $ 32.81 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 37.39 |
| Apprentice 4th Level (95%) | $ 35.00 | $ 1.50 | $ 36.50 | $ 0.50 | $ 2.25 | $ 1.60 | $ 0.23 | $ 41.08 |

PLEASE NOTE FOR ALL PROJECTS:

Fringes

- **Vacation/Bonus Fund** – Must be taxed as wages by the employer, therefore employer is responsible for adding the bonus amount to the employees' check, tax it, and remit it to the fund office. All other fringe benefit contributions are non-taxable benefits.

- **Retirement Fund** – Employees may elect to defer additional amounts from their wages into the Retirement Plan on a **pre-tax** basis. They may defer anywhere from $0.50 to $7.00 per hour, in increments of $0.50. To defer their wages, they must complete a written authorization form and supply it to both the employer and fund office.

- **IMPACT** - The employer will contribute to IMPACT for each hour worked as follows:
  - ○ $0.14 per hour for projects at the Residential and Building Heavy Highway rates
  - ○ $0.23 per hour for projects at Nuclear, and Specialty Welding Rates

5

## APPENDIX "A" – EFFECTIVE JULY 1, 2021 TO JUNE 30, 2022

- **Work Assessment** - Work Assessments of four and seven eighths percent (4.87%) of total wages should be deducted from the employees' gross wages and remitted in accordance to the employers' contribution instructions.

- **Designated Key Persons** – All applicable Key Employee fringes must be paid timely to the RDC Trust Funds and shall be no less than the fringe rates for H&W, Retirement, and Bonus/Vacation set under the Building, Heavy, & Highway rates for each area worked.

- All fringes should be remitted to the RDC Trust Funds: PO BOX 4148; Portland, OR 97208 – Ph. 1-800-846-0611

### INDENTURED APPRENTICE WAGE SCHEDULE

As per the registered apprenticeship standards adopted 4/23/2019

| | |
|---|---|
| First six months | 874 Hours – 65 % of the Journeymen's rate |
| Second six month | 874 Hours - 75 % of the Journeymen's rate |
| Third six months | 874 Hours - 85 % of the Journeymen's rate |
| Fourth six months | 874 Hours - 95 % of the Journeyman's rate |

6

SpaceX, Starship Intergration Tower 2, Site Specific / 1 (one) Project

## APPENDIX "B" – LOW UNION DENSITY FORM

### Low Union Density Areas
### Market Recovery Rate Request Form

Please be advised that Lone Star Rebar Installers, LLC will be performing work on the
_____
(Name of Company)
SpaceX, Cape Canaveral, FL a project that is to be performed in an area that has
_____
(Name of Project)
been determined to be in a low union density area. Therefore, Lone Star Rebar Installers, LLC
_____
(Name of Company)
will pay no lower than the residential wage rates consistent with the

Agreement between the parties.  If this form is not submitted and approved, the

Building, Heavy, & Highway rate for the area must be paid.

### Additional Information

| | | | | |
|---|---|---|---|---|
| PLA Project | ☐ | Yes | ☒ | No |
| NMA  Project | ☐ | Yes | ☒ | No |
| Subject to Davis Bacon | ☐ | Yes | ☒ | No |

Type of Project *(ie. Bridge, building, garage, etc)*: Private Commercial
_____

Address of Project: Spaceport Way
_____

City: Cape Canaveral    State FL    County Brevard

General Contractor: _____

General Contractor Address: _____

Owner: SpaceX
_____

Signed:

_____    February 21, 2022
REGIONAL DISTRICT COUNCIL    DATE

_Leo Castro_
_____    February 21, 2022
EMPLOYER REPRESENTATIVE    DATE


*The approval by the Union to use residential rates does not relieve the employer's responsibilities to pay wage rates required by State or Federal law.*

<u>**APPENDIX "C" – GRANDFATHERED JOBS FORM**</u>

**EMPLOYER:** LSRI LLC                **CONTACT PHONE #:** 817-770-0937

## <u>GRANDFATHERED JOBS FORM</u>

The undersigned agree that the following list of projects shall be excluded from the Terms and Conditions of the RDC CBA:

| <u>Project Name</u> | <u>Project Location</u> | <u>Scope of Work</u> | <u>Bid Date</u> | <u>Start Date</u> | <u>Completion Date</u> |
|---|---|---|---|---|---|
| All Other Projects | Current and Future | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Signed:

_____          _____
UNION REPRESENTATIVE                        DATE

*Leo Castro*                                         02/21/2022
EMPLOYER REPRESENTATIVE             DATE

☐   *CHECK HERE IF THERE ARE NO GRANDFATHERED JOBS*

26

This is a one job agreement specifically for the Space X project listed on the one one job agreement addendum only, therefore there is no need to "grandfather" other LRSI jobs.

## 1- PROJECT AGREEMENT ADDENDUM

Lone Star Rebar Installers, LLC ("Contractor") and Reinforcing Ironworkers Local 846/847 ("Union") agree to enter into a collective bargaining relationship covering work for the following project (the "Project"):

**Project Name**: SpaceX, Starship Integration Tower 2

**Site Address**: Cape Canaveral, Florida

**Project Start Date**: February 21, 2022   **Estimated Duration**: Approx. 12 weeks

**Contractor**: Lone Star Rebar Installers, LLC

**Contractor Address**: 417 N. Rudd Street, Burleson, TX 76028

**Phone**: M: (682) 704-5883   **Email**: Leo@LoneStarRI.com

Contractor adopts by reference the Regional District Council & Reinforcing Local Unions 846 and 847 collective bargaining agreement currently in effect, its Appendices and Addenda, as well as any amendments and successor agreements thereto (the "Labor Agreement"), subject to the following conditions. Union and Contractor agree that the Labor Agreement shall apply only to the Project and shall terminate upon completion of Contractor's work on the Project.

Contractor agrees to be bound by the trust agreements identified in the Labor Agreement, as they now exist and as they are hereafter amended, and make contributions to those trusts pursuant to the terms of the Labor Agreement and trust agreements.

This Project Agreement Addendum represents the sole agreement between the Contractor and Union on this subject matter. This Project Agreement Addendum may be amended only in writing through mutual consent of the parties.

**CONTRACTOR**

Lone Star Rebar Installers, LLC

By: *Leo Castro*

Title: Leo Castro, President & CEO

Date: February 21, 2022

**UNION**

Regional Reinforcing IW LU # 846

By: *Jose J. Mendoza*

Title: Jose J. Mendoza, BM/FS-T

Date: February 21, 2022

# REGIONAL DISTRICT COUNCIL BENEFIT TRUST

c/o The William C. Earhart Company, Inc.
Ph. (800) 846-0611 Fx. (503) 331-8232
P.O. Box 4148
Portland, Oregon 97208

## FRINGE RATE VERIFICATION FORM

Employer Name: **Lone Star Rebar Installers, LLC**

Local Union #: **RDC / IW LU # 846**

Check One:
- ☐ Project Labor Agreement
- ☐ Prevailing Wage Agreement
- ☑ Other **Site Specific / 1 (one) Project Agreement (CBA)**

Project Name: **SpaceX, Starship Integration Tower 2**    State: **Cape Canaveral, Florida**

Project Start Date: **February 21, 2022**    Estimated Completion Date: **Approx. 12 weeks**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Contributory Rate by Fund:    **Appendix "A" - Florida, Residential Wage & Fringe Rate**

**Employer paid Hourly:**

| | | |
|---|---|---|
| Health & Welfare | $ | 1.65 |
| Appr./Training | $ | 0.63 |
| Bonus/Vacation | $ | 0.35 |
| Annuity/Pension | $ | 0.08 |
| Industry Advance | $ | 0.02 |
| IMPACT | $ | 0.14 |

**Deduct from Wages:**    Wrk Assmnt    **4.87% of total wages**

Other Funds: _____ $ _____    _____ % _____
Name of Fund                                         Name of Fund

Contact Information: **Leo Castro, President & CEO**    Phone & Fax: **M:(682) 704-5883 / F:(817) 778-9892**
Name

Email Address: **Leo@LoneStarRI.com**    Date: **February 21, 2022**

Business Agent Signature: _____    Date: **February 21, 2022**